IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA ROCK-EPSTEIN, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALLSTATE INSURANCE COMPANY, | : | No. 07-2917 |
| Defendant. | : | |

**MEMORANDUM & ORDER**

**Schiller, J.**                                                                                                                       **September 29, 2008**

      Plaintiff, Linda Rock-Epstein, sought coverage from Defendant, Allstate Insurance Company ("Allstate"), after her home and personal belongings suffered water damage. Allstate denied Rock-Epstein's claim for insurance coverage based on exclusions contained in her homeowner's policy. Plaintiff brought this action against Allstate for breach of contract and bad faith under Pennsylvania law. The parties have filed cross-motions for summary judgment, which are now before the Court.[1] Plaintiff also seeks leave to amend her Complaint. For the reasons below, the Court grants in part, and denies in part, Allstate's motion for summary judgment. Plaintiff's motions for summary judgment and for leave to amend are denied.

**I.   BACKGROUND**

      Allstate issued to Rock-Epstein policy number 908412475, which included a Deluxe Plus Homeowners Policy form AP325-2, Deluxe and Deluxe Plus Amendatory Endorsement form

---

[1]Allstate also filed a motion to strike Plaintiff's reply to its response to Plaintiff's countermotion for summary judgment because Plaintiff failed to seek permission to file the reply. This Court's policies and procedures are clear: a party may file a reply only with this Court's permission. Because Plaintiff did not seek leave to file a reply, Allstate's motion is granted. The Court did not consider Plaintiff's reply in deciding the summary judgment motions.

AP1300 and Amendment of Policy Provisions form AP1200 (collectively, "the Policy"). (Def.'s Mot. for Summ. J. ¶ 5.) The Policy covered Rock-Epstein's home at 504 Swartley Road in Hatfield, Pennsylvania. (Pl.'s Countermot. for Summ. J. ¶ 79.) The Policy provided for dwelling protection for "sudden and accidental direct physical loss to property . . . except as limited or excluded in this policy." (Def.'s Mot. for Summ. J. Ex. C [Homeowner's Policy] at 7.) This protection excluded losses to the property for "[f]lood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind." (*Id*. at 8.) The Policy also covered "sudden and accidental direct physical loss . . . except as limited or excluded in this policy" to personal property "owned or used by an insured." (*Id*. at 10, 12.) This personal property coverage included damage caused by windstorm or hail, except for "loss to covered property inside a building structure, caused by rain, snow, sleet, sand or dust unless the wind or hail first damage the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall." (*Id*. at 13.)

On or about June 28, 2006, Rock-Epstein suffered what she asserts was a covered loss to her home and personal property. She hired Daniel Monaco, a public adjuster, to assist her in filing a claim under the Policy. Monaco sent a letter to Allstate, dated August 9, 2006, advising Allstate of the representation and that a windstorm caused Plaintiff's loss. (Def.'s Mot. for Summ. J. Ex. D [Aug. 9, 2006 Monaco letter].)

Allstate assigned the claim to Matthew Pfohl and on August 15, 2006, Pfohl inspected the property with Monaco. (Def.'s Mot. for Summ. J. ¶¶ 13, 15.) Prior to the inspection, Plaintiff hired a company to clean the water-damaged areas of the property. (Def.'s Mot. for Summ. J. ¶ 17 & Ex. G [Puroclean Documents].)

Monaco took Pfohl to the back of the home and showed him where the water purportedly entered the home. (Pl.'s Countermot. for Summ. J. Ex. A [Pfohl Dep.] at Ex.1 [Aug. 15, 2006 Claims Log].) According to Pfohl's log, "the insured has an area on the rear cement porch that is ground level where she has a hot tub with a cover on it. The [public adjuster] told me that the water had run off the roof on to the spa cover and then splashed through the jalousie window that was left partially open." (*Id*.) Pfohl also reported that Monaco told him that "the water had run off the roof settled on the top of the spa and then wind blew it or it ran over and hit the ground and went through the window that was left open." (*Id*. at Ex. 3 [Sept. 2, 2006 Claims Log].)

Allstate denied the claim based on the exclusion for "[f]lood, including, but not limited to surface water . . . whether or not driven by wind." (Def.'s Mot. for Summ. J. Ex. J. [Aug. 31, 2006 Pfohl letter].) In response to Pfohl's letter, Monaco sent a letter disagreeing with the denial of coverage. According to Monaco, the loss was caused by "wind driven rain through a broken, open type window in the rear of a home." (Pl.'s Countermot. for Summ. J. Ex. A at Ex. 7 [Oct. 9, 2006 Monaco letter].) Monaco disagreed that surface water could have caused the damage given the location of the home and "the way it sits." (*Id*.)

Rock-Epstein filed her complaint in the Philadelphia Court of Common Pleas on June 25, 2007, alleging breach of contract and bad faith. Allstate removed the case to this Court on July 16, 2007. Fact discovery is now closed and both parties have filed dispositive motions now before the Court.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

3

any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial burden of identifying those portions of the record that it believes illustrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party makes such a demonstration, the burden then shifts to the nonmovant, who must offer evidence that establishes a genuine issue of material fact that should proceed to trial. *Id.* at 324; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989). When evaluating a motion brought under Rule 56(c), a court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). A court must, however, avoid making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002). A court must apply the same standards to cross-motions for summary judgment. *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987); *see also Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001).

### III. DISCUSSION

#### A. Breach of Contract

Under Pennsylvania law, a plaintiff must prove the following to recover for a breach of contract: (1) the existence of a contract; (2) a breach of a duty imposed by the contract; and (3)

4

damages. *Sullivan v. Chartwell Inv. Partners LP*, 873 A.2d 710, 716 (Pa. Super. Ct. 2005). When an insurer relies on a policy exclusion to deny coverage, however, it bears the burden of showing the exclusion applies. *Cont'l Cas. Co. v. County of Chester*, 244 F. Supp. 2d 403, 407 (E.D. Pa. 2003); *see also Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). In Pennsylvania, the court, not a jury, generally performs the function of interpreting an insurance contract. *401 Fourth St., Inc. v. Investors Ins. Group*, 879 A.2d 166, 171 (Pa. 2005). The court's task is to unearth the parties' intention as evidenced by the words used in the insurance policy. *See id*. When the language of an insurance policy is clear and unambiguous, a court must enforce that language. *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999) (*citing Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)).

    1.  Summary judgment is inappropriate because the parties dispute the cause of the loss.

According to Allstate, Rock-Epstein's loss occurred when water ran off the roof, settled atop a covered spa, and was blown onto the ground before entering the house through an open window. Allstate applied the exclusion for damage caused by surface water to deny coverage. While there is no ambiguity regarding the definition of surface water, the parties' dispute over how the damage occurred precludes summary judgment.

Although the Policy does not define the term "surface water," Pennsylvania courts have defined this term to include "waters on the surface of the ground, usually created by rain or snow, which are of a casual or vagrant character, following no definite course and having no substantial or permanent existence." *T.H.E. Ins. Co. v. Charles Boyer Childrens Trust*, 269 Fed. Appx. 220, 222 (3d Cir. 2008); *see also Richman v. Home Ins. Co. of N.Y.*, 94 A.2d 164, 166 (Pa. Super. Ct.

1953). The Third Circuit, applying Pennsylvania law, has concluded that "rainwater, once it hit the ground, 'ceased to be rain and, properly characterized, was by then surface water.'" *T.H.E.*, 269 Fed. Appx. at 223 (quoting *Al Berman, Inc. v. Aetna Cas. & Sur. Co.,* 216 F.2d 626, 628 (3d Cir. 1954)).

Although the legal definition of "surface water" is clear, the parties dispute whether surface water caused the damage to Rock-Epstein's property and personal belongings. Plaintiff's breach of contract claim therefore cannot be resolved through summary judgment because the parties have a fundamental disagreement about a material fact – what caused the loss. Plaintiff's public adjuster claimed that the loss was caused by a "wind driven experience based on the amount of rain and wind that day along with the debris that had blown into that area causing the excess water to just run into the basement window." (Oct. 9, 2006 Monaco letter.) He also stated that, based on the location of the home and "the way it sits," the only way for surface water to have caused the damage would have been for the water to run uphill, a virtual impossibility. (*Id*.) Allstate's claims adjuster acknowledged that the Policy could apply if wind-driven rain caused the damage.[2] (Pfohl Dep. at 17:8-13.) However, Allstate contends that, based on the public adjuster's description of how the damage occurred and the investigation of its own adjuster, the Policy's surface water exclusion precludes coverage. This dispute over causation must be resolved by a jury. *See Allison v. Allstate Indem. Co.*, Civ. A. No. 07-4618, 2008 WL 2631557, at *3 (E.D. Pa. June 27, 2008) (denying summary due to disagreement over cause of loss).

---

[2]Pfohl doubts this is what actually occurred. During his deposition, Pfohl testified that he believed based on the damages he saw, he did not think water entered through the window. (Pfohl Dep. at 56:5-6.) Rather, he believed a sewer backup – which was also not covered by the policy – caused the damages. (*Id*. at 65:16-18.)

> 2.  *Allstate has not waived its right to assert that the wind and hail exclusion applies to preclude coverage.*

Allstate also asserts that the Policy excludes coverage to Rock-Epstein's personal property. As noted previously, the Policy excludes "loss to covered property inside a building structure, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall." (Homeowner's Policy at 13.) Plaintiff argues that Allstate failed to note the exclusion for wind and hail in its letter to Plaintiff denying coverage and therefore it may not rely on that exclusion now because of the "mend the hold" doctrine. (Pl.'s Countermot. for Summ. J. ¶¶ 53-57 & Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. at 6-8.)

The Court rejects the argument that Allstate waived its right to rely on the wind and hail exclusion contained in the Policy. Absent a showing of prejudice to the insured, the failure to raise all possible defenses in a denial of coverage letter is not a waiver. *See Continental Ins. Co. v. Kovach*, Civ. A. No. 05-1152, 2007 WL 2343771, at **8-9 (W.D. Pa. Aug. 14, 2007); *see also Nationwide Mut. Ins. Co. v. Nixon*, 682 A.2d 1310, 1314 (Pa. Super. Ct. 1996). "[I]n the context of an insurer's failure to assert all possible defenses to coverage, the courts apply an estoppel only when there is actual prejudice, that is, when the failure to assert all possible defenses causes the insured to act to his detriment in reliance thereon." *Mendel v. Home Ins. Co.*, 806 F. Supp. 1206, 1215 (E.D. Pa. 1992). Because Plaintiff is asserting an estoppel, she must establish that defense "by 'clear, precise, and unequivocal evidence.'" *See id.* (*quoting Chrysler Credit Corp. v. First Nat'l Bank and Trust Co.*, 746 F.2d 200, 206 (3d Cir. 2004)).

Plaintiff has not put forward any evidence of prejudice, instead asserting that the "mend the

hold" doctrine limits Allstate's defenses to the "surface water" exclusion. The "mend the hold" doctrine limits the right of a defendant in a breach of contract action to alter its defense midway through a lawsuit.³ *See RLI Ins. Co. v. Conseco, Inc.*, App. A. No. 07-2831, 2008 WL 4140620, at *6 n.2 (7th Cir. Sept. 9, 2008). The doctrine first appeared in *Railway Co. v. McCarthy*, 96 U.S. 258 (1877), and Pennsylvania courts have rarely applied it. The doctrine stems from the obligations of good faith and ethical dealings in contractual relationships. *See Harbor Ins. Co.*, 922 F.2d at 363.

Without discussing its continued validity in Pennsylvania, the doctrine is inapplicable here. The "mend the hold" doctrine prevents a party from using defenses as moving targets and switching legal theories after litigation has commenced. *See Primetime 24 Joint Venture v. DirecTV Inc.*, Civ. A. No. 99-3307, 2000 WL 426396, at *8 (S.D.N.Y. Apr. 20, 2000). Here, Plaintiff seeks to use it to forever freeze Allstate's litigation defenses to those contained in a denial of coverage sent nearly a year before litigation commenced. But Allstate has not taken contrary positions in this litigation; from the beginning Allstate has asserted that the Policy's exclusions preclude coverage. Additionally, Rock-Epstein has not even attempted to show prejudice. Prejudice will not be presumed nor can an insured expand the coverage for which it paid through waiver. *See Consol. Rail Corp. v. Hartford Accident and Indem. Co.*, 672 F. Supp. 82, 85 (E.D. Pa. 1987). Accordingly, Allstate is not forever barred from asserting coverage defenses not noted in its denial of coverage letter, particularly because Plaintiff cannot show prejudice or even surprise from Allstate's defenses. Nonetheless, summary judgment is inappropriate because, as discussed above, the cause of the loss is a matter of debate that a jury must settle.

---

³The doctrine gets its name from a nineteenth-century wrestling term, which refers to a wrestler getting a better grip on his opponent. *Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 362 (7th Cir. 1990).

> 3. *Plaintiff's alleged failure to comply with the Policy does not warrant summary judgment.*

Finally, Allstate asserts that Plaintiff cannot recover for a breach of contract because she failed to comply with the Policy's condition that the insured show Allstate the damaged property "as often as [Allstate] reasonably require[s]." (Homeowner's Policy at 20.) Defendant claims that Rock-Epstein waited more than a month to inform Allstate of the loss and did so only after the property had been cleaned. (Def.'s Mot. for Summ. J. ¶¶ 34-37.)

Allstate's argument fails for a number of reasons. First, Allstate submits no evidence that Plaintiff failed to show its adjuster the damaged property when requested. In fact, Pfohl surveyed the damage and was able to conduct an investigation. Nothing in Pfohl's testimony or his claims log indicates that he was unable to perform a thorough investigation despite the cleaning. Indeed, Pfohl admits that the timing of the reporting of the claim did not prejudice Allstate's ability to investigate the loss. (Pfohl Dep. at 70:8-14.) Second, the policy also provides that in the event of a loss potentially covered by the policy, the insured must "protect the property from further loss," "[m]ake any reasonable repairs necessary to protect [the property]" and provide a detailed list of damaged property. (Homeowner's Policy at 20.) Plaintiff was not required to keep her property in a state of disrepair. Furthermore, she kept detailed estimates of the damage to her property and provided a detailed list of the personal possessions allegedly damaged by the water. (Damages Estimate.) She also has records from the company that cleaned the property. (Puroclean Records.) If Allstate's adjuster wanted additional information from Puroclean regarding the condition of the property prior to the alleged loss, he had the name and number of the person with whom to speak. Indeed, the claims log contains an entry noting that Pfohl discussed the matter with Puroclean and that the

company would send pictures of the damage. (Def.'s Ex. E [Aug. 20, 2006 Claims Log].) Finally, even assuming Plaintiff failed to comply with all of the terms of the Policy, the Policy does not state that the penalty for noncompliance is denial of coverage. Although the Policy contains language that the insured's concealment or misrepresentation of a material fact is grounds for denial of coverage, Allstate does not argue that Rock-Epstein concealed any material fact or lied to it about the loss. Accordingly, no basis exists for dismissing Plaintiff's claims for failure to comply with the Policy.

   **B.   Bad Faith**

Plaintiff also brings a claim under the Pennsylvania bad faith statute, 42 PA. CONS. STAT. § 8371. To prevail on a bad faith claim, an insured must show that the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim. *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 505 (3d Cir. 2004) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). To constitute bad faith for the failure to pay a claim, the insurer must have a dishonest purpose. *The Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005). Although the refusal to pay need not be fraudulent, mere negligence or bad judgment is insufficient. *Id*. The burden rests with the insured to show bad faith by clear and convincing evidence. *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 528 (3d Cir. 1997). To satisfy this standard, the insured must present evidence "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999).

The clear and convincing standard raises the insured's burden in opposing a summary judgment motion "because the court must view the evidence presented in light of the substantive

10

evidentiary burden at trial." *Id*. Furthermore, since the essence of a bad faith claim is the denial of coverage without good reason, an insurer is entitled to summary judgment if it can show a reasonable basis for its actions. *See Jung v. Nationwide Mut. Fire. Ins. Co.*, 949 F. Supp. 353, 360 (E.D. Pa. 1997); *Quaciari v. Allstate Ins. Co.*, 998 F. Supp. 578, 581 n.3 (E.D. Pa. 1998).

Plaintiff sets forth a litany of purported evidence to demonstrate Allstate's bad faith. (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. at 11-12.) For example, Rock-Epstein contends that Allstate's adjuster, Matthew Pfohl, did not believe the explanation of Dan Monaco, who acted as Rock-Epstein's public adjuster, regarding the cause of the damage yet failed to use an expert to determine the cause of the loss. She also contends that Pfohl lacked evidence to confirm what he believed caused the damage. She further claims that Pfohl denied coverage based on the policy's surface water exclusion although he had no basis for his stated conclusion regarding the definition of surface water.

Plaintiff's list of Pfohl's alleged wrongdoings, unsupported by evidence, is insufficient to show bad faith. The record is uncontested that Pfohl investigated the claim by going to the insured's home. Once there, Monaco walked Pfohl to the rear of the home and "showed him an area where the heavy rains had overflowed off the roof, and then overflowed the gutter and landed on a spa cover, and then after that it went onto the ground. And he told me that the water bounced through the window and flooded the basement." (Pfohl Dep. at 26:21 - 27:3.) Pfohl's claims log confirmed that Monaco told him that water had run off the roof and onto a spa cover before it splashed through a partially opened window. (Aug. 15, 2006 Claims Log.) To further investigate, Pfohl attempted on two occasions to contact the company that Rock-Epstein had hired prior to reporting the claim to clean the damaged area, but he never received a return call. (Pfohl Dep. at 28:15 - 29:2; 32:10-

11

13.) Based on his investigation, Pfohl did not believe that the damage occurred in the manner Monaco described. (*Id*. at 29:3-8; 65:16-18.) Ultimately, however, Pfohl could not explain how the water entered the basement. (*Id*. at 32:1-5.) Therefore, to determine whether Rock-Epstein suffered a covered loss, he accepted as accurate Monaco's explanation for the cause of the loss. (*Id*. at 33:22 - 34:9; 48:3-7.)

Pfohl's investigation is the antithesis of bad faith. Pfohl has served as a Senior Claims Adjuster with Allstate since 2002 and has been a claims adjuster since 1995. (*Id*. at 7:23 - 8:19.) He conducted an investigation at the location of the damage and spoke with the adjuster hired by Plaintiff to determine the cause of any loss. Furthermore, although Pfohl disagreed with the Public Adjuster's assessment of the cause of the damage, he accepted the representation of Rock-Epstein's representative in an effort to find coverage. Nonetheless, Pfohl determined that coverage did not exist as the loss was reported to him. The record is uncontested that Pfohl discussed his investigation with his supervisor, who agreed with Pfohl's decision, and tried to find additional ways to cover the damages, but the facts he was provided with and the damages he saw did not, in his opinion, allow for coverage. (Pfohl Dep. at 33:5-9; 38:17 - 39:1; 127:8-10.)

The parties disagreement over whether Plaintiff suffered a covered loss is not, as a matter of law, bad faith. Allstate was entitled to investigate Rock-Epstein's claim and render a decision based upon the facts the adjuster received from her representative. *See Babayan*, 430 F.3d at 138 ("Pennsylvania law provides that it is not bad faith to conduct a thorough investigation into a questionable claim."). Additionally, Plaintiff's disagreement with Pfohl about whether an accumulation of water on the ground is required for the surface water exclusion to apply does not support a bad faith claim. Pfohl defined "surface water" as "any natural water that comes from the

air like rain that collects on the ground of – around the home . . . [a]nytime the water hit the ground, whether it be a drop, or a gallon, or ten gallons, it's considered surface water." (Pfohl Dep. at 34:10-14; 38:5-7.) Plaintiff's contention that a single drop of water cannot be termed an accumulation is irrelevant to a bad faith determination. Even assuming that Pfohl's definition is wrong, a reasonable but incorrect interpretation of an insurance policy and the law is not bad faith. *See Bostick*, 56 F. Supp. 2d at 587 (citations omitted).

Finally, Plaintiff has provided no evidence that Allstate's failure to employ an expert to determine the cause of the loss rises to the level of bad faith. At most, Allstate erred in not engaging an expert to further examine the damage, but that mistake in judgment falls far short of bad faith. *See Babayan*, 430 F.3d at 137 (noting that mere negligence or bad judgment is not bad faith); *Jung*, 949 F. Supp. at 361 (refusing to find bad faith because insured put forth no evidence of ill will or dishonest motive and allegations at most described negligence).

Rock-Epstein's bad faith allegations merely rehash her breach of contract claim against Allstate for denying coverage for her loss. Indeed, Plaintiff's response to Defendant's interrogatory seeking the factual basis for her bad faith claim was that "Defendant denied Plaintiff's claim without reasonable basis." (Def.'s Mot. for Summ. J. Ex. I [Resps. to Interrogs.] No. 20.) The evidence submitted to the Court does not meet the clear and convincing standard. Accordingly, the Court will grant Allstate's summary judgment motion on Plaintiff's bad faith claim.

### C.     Plaintiff's Motion for Leave to Amend

Plaintiff also seeks leave to amend her complaint to add a claim for bad faith conduct during this litigation.

Rule 15 of the Federal Rules of Civil Procedure states that a court "should freely give leave

[to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). A court may deny leave to amend based on undue delay, bad faith, dilatory motive, prejudice, and futility. *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). "Futility" means that the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. *Id*.

Plaintiff's proposed amended complaint accuses Allstate of misrepresenting material facts and the law to this Court, presenting false evidence to the Court, and refusing to negotiate in good faith. (Pl.'s Mot. for Leave to Amend Compl. at Ex. B [Proposed Am. Compl.] ¶ 17.) These are serious allegations made against both Allstate and its attorneys; the proposed amended complaint calls into question whether Allstate's counsel violated its ethical obligations to this Court and engaged in fraud. But Plaintiff does nothing more than throw out baseless and conclusory statements that fail to even put Allstate on notice as to any alleged bad faith conduct committed during the pending litigation. Plaintiff provides no explanation for her decision to raise these issues after the close of fact discovery and after both parties have filed dispositive motions. This Court will not allow Plaintiff to throw out baseless accusations of fraud and bad faith, particularly at this late stage in the proceedings. Plaintiff may not amend her Complaint.

## IV.   CONCLUSION

How did Rock-Epstein's home and property get damaged? To answer this question, a jury must decide whose version of events to believe. Therefore, the Court denies both Plaintiff's and Defendant's motions for summary judgment on the breach of contract claim. Since Plaintiff's bad faith claim fails as a matter of law, this Court grants summary judgment as to that claim. Finally, Plaintiff's motion for leave to amend is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA ROCK-EPSTEIN, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALLSTATE INSURANCE COMPANY, | : | No. 07-2917 |
| Defendant. | : | |

## ORDER

**AND NOW**, this **29th** day of **September**, **2008**, upon consideration of the Parties' cross-motions for summary judgment, Plaintiff's motion for leave to amend her complaint, Defendant's motion to strike reply, and the Parties' responses thereto and for the foregoing reasons, it is hereby **ORDERED** that:

1. Defendant's Motion for Summary Judgment (Document No. 20) is **GRANTED, in part,** and **DENIED, in part**, as follows:

    a. The motion is **DENIED** as to Count I (breach of contract) of Plaintiff's Complaint.

    b. The motion is **GRANTED** as to Count II (bad faith).

2. Plaintiff's Counter Motion for Summary Judgment (Document No. 22) is **DENIED**.

3. Plaintiff's Motion for Leave to Amend Complaint (Document No. 30) is **DENIED**.

4. Defendant's Motion to Strike Reply (Document No. 29) is **GRANTED**.

**BY THE COURT:**

**Berle M. Schiller, J.**